```
              IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF MONTANA

                        HELENA DIVISION

                           *******

In re                                  CV 07-15-H-CCL
WENDELL A. DEADMOND, JR.                Bankruptcy No. 06-60512-7
and RENAE A. DEADMOND,

       Debtors,
_____

UNITED STATES TRUSTEE,                 OPINION and ORDER

       Appellant,

-v-

WENDELL A. DEADMOND, JR.
and RENAE A. DEADMOND,

       Appellees.

                           *******
```

This case comes before the Court as an appeal filed by the United States Trustee (the "Trustee") from a decision of the United States Bankruptcy Court for the District of Montana. In that decision, the Bankruptcy Court denied the Trustee's Motion to Dismiss the Debtors' Chapter 7 bankruptcy petition. The Motion was filed on the ground that the petition is abusive within the meaning of 11 U.S.C. § 707(b)(2), and in the

alternative on the ground that the petition is an abuse of Chapter 7 based on the "totality of the circumstances", 11 U.S.C. § 707(b)(3).  This case turns on a question of law; the facts are not in dispute.

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1).

## BACKGROUND

The facts of this case are set forth in the opinion of Bankruptcy Judge Ralph B. Kirscher dated February 27, 2007. Wendell A. and Renae A. Deadmond (the "Debtors") filed for Chapter 7 bankruptcy on June 29, 2006, after the effective date of The Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA").  The Debtors have one secured obligation relating to their residence in the amount of $83,957.67.  The Debtors have unsecured obligations of $49,228.25, including $8,403.72 in medical bills, $15,659.69 relating to a repossession of a 2004 Volvo, and $2,500 relating to a 1997 student loan.  The Debtors also owe $3,433.00 in 2004 income taxes.  Both Debtors work in Helena, Montana, and have no children under the age of 18.  Judge Kirscher found that

their gross monthly income is $5,518.00, while their monthly expenses are $5,441.31, resulting in $76.69 of monthly disposable income.  The Debtors own two vehicles free and clear of liens; one vehicle is twelve years old and the other vehicle is twenty-four years old.

Under the BAPCPA, a Chapter 7 bankruptcy petition may be dismissed (or converted to a Chapter 13 bankruptcy with the consent of the debtors) if it is an abuse of Chapter 7, either as defined by the BAPCPA's "Means Test" or as defined by the more subjective "Totality of the Circumstances Test," which was already codified prior to the BAPCPA.  *See* 11 U.S.C. § 707(b)(2) ["Means Test"] and § 707(b)(3) ["Totality of the Circumstances Test"].  In this case, the Trustee filed a Motion to Dismiss the Debtors' Chapter 7 petition as abusive pursuant both to the Means Test and, in the alternative, to the Totality of the Circumstances Test.  Judge Kirscher denied the Motion on both grounds.

## LEGAL STANDARD

A district court's legal standard of review over a bankruptcy appeal is the same standard that circuit courts use to

review district court decisions.  *See Ford v. Baroff*, 105 F.3d 439, 441 (9th Cir. 1997).  The bankruptcy court's conclusions of law are reviewed *de novo* and factual findings are reviewed for clear error.  *See In re International Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007).

## DISCUSSION

The Trustee moved to dismiss the Debtors' Chapter 7 petition alleging that the Debtors could not pass the Means Test,[1] making their petition presumptively abusive under the Bankruptcy Code, as amended by the BAPCPA, and therefore vulnerable to dismissal. The Means Test presumes that "abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of–

> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
>
> (II) $10,000."

---

[1] Not every Chapter 7 petitioner need submit to the Means Test.  Only those debtors whose income exceeds the median income for the relevant household size in the state in which the debtors reside must satisfy the Means Test.  11 U.S.C. § 707(b)(7).

4

11 U.S.C. § 707(b)(2)(A)(I).  This means that a presumption of abuse does not arise if the debtor's disposable monthly income is less than $100 each month ($6,000 over 60 months), but the presumption of abuse arises if the debtor's disposable monthly income is more than $166 each month ($10,000 over 60 months). Additionally, a presumption of abuse arises if the debtor's disposable monthly income is between $100 and $167 *and* this disposable income over 60 months equals twenty-five percent of the debtor's nonpriority unsecured debt.  If a presumption of abuse arises, the statute provides for rebuttal by a debtor for "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces...."  11 U.S.C. § 707(b)(2)(B)(I).

   According to the factual findings of Judge Kirschner, the Debtors have a monthly disposable income of $76.69.  Over a 60 month period, this disposable income would amount to $4,601.40. No presumption of abuse arises under section 707(b)(2) because the Means Test puts the Debtors under the $6,000 threshold.

   After finding that no presumption of abuse arises under the Means Test, Judge Kirschner next examined the Debtor's situation

5

under the Totality of the Circumstances Test of section 707(b)(3). Judge Kirschner saw no evidence of manipulation, extravagance, or bad faith on the part of the Debtors. Judge Kirschner also was not convinced that the Debtors had the financial ability to make meaningful payments to creditors in a Chapter 13 bankruptcy, and especially so since the Debtors passed the Means Test (*i.e.*, showed that they *lack* the means to pay their creditors).

The central question in this case is whether the Debtors should be permitted to include among their monthly expenses the $803.00 transportation ownership expense amount applicable to two vehicles, even though the Debtors own their vehicles debt-free. (This Court notes that the Trustee suggests that the Debtors take a deduction of $400 for their vehicle operation expenses, as allowed by the IRS Transportation Standards, Operating Costs and Public Transportation Costs.) Judge Kirschner, citing his prior holding in *In re Naslund*, 359 B.R. 781 (Bankr. D. Mont. 2006), ruled that the Debtors could take the full transportation ownership expense of $803.00 even though they make no payments on their vehicles. The Trustee objects to that ruling, arguing that

6

the difference between the vehicle ownership deduction ($803) and the vehicle operating deduction ($400) should be added to the Debtors' monthly disposable income.

Section 707(b) provides that

> The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides....

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).  The IRS lists National Standards and Local Standards on its website at [www.irs.gov/individuals/article/0,,id=96543,00.html](www.irs.gov/individuals/article/0,,id=96543,00.html).  These tables are specifically designed for IRS use to determine taxpayers ability to repay delinquent taxes.  The IRS website provides a link to the website of the U.S. Trustee Program, at [www.usdoj.gov/ust](www.usdoj.gov/ust), which provides tables of IRS data and Census data in a format designed to assist debtors in filling out their allowable monthly expenses on Bankruptcy Form 22A.  These tables provide allowable amounts that vary according to household size and gross monthly income for such categories as Food, Housekeeping Supplies, Apparel & Services, Personal Care &

services, Personal care products & Services, Miscellaneous. These tables also provide Local Standards (organized by state and county) for Housing and Utilities and the Transportation Operating Costs and Ownership Costs, the latter of which include a National Standard (applicable in this case) of $433 for transportation ownership expense for the first vehicle, and $322 for the second vehicle.

In a recent Bankruptcy Court decision, *In re Canales*, 377 B.R. 658 (Bankr. C.D. Cal. Oct. 31, 2007), the Bankruptcy Court held that a Chapter 13 debtor who owns her vehicle free of any loan or lease payments is not entitled to the transportation ownership deduction in calculating her disposable monthly income for purposes of section 707(b) Means Testing.  The *Canales* decision reviews the case law on the availability of the transportation ownership deduction to debtors who make no car payments, and finds no clear majority rule, as the cases from around the country are almost evenly divided.  *In re Nasland* is listed as one of the many bankruptcy court cases which hold that the transportation ownership deduction is available to any debtor who owns a vehicle, regardless of the existence of any ownership

expenses.

    Since the *Canales* decision, however, a more recent decision by a Bankruptcy Appellate Panel of the Ninth Circuit, *In re Ransom*, ___ B.R. ___, 2007 WL 4625248 (B.A.P. 9th Cir. Dec. 27, 2007), holds that the transportation ownership expense is not available to those debtors who make no loan or lease payments on their vehicles.  Neither the *Canales* nor the *Ransom* decision is binding on this district court, although the *Ransom* decision is binding on bankruptcy courts of the Ninth Circuit.  *See Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470 (9th Cir. 1990).  However, without a guiding appellate decision from the Ninth Circuit, this Court deems the *Ransom* decision to be highly persuasive authority.

    Additionally, this is the position taken by the IRS in utilizing these standards for the purpose of determining capacity to pay delinquent taxes.  The IRS Collection Standards provides that "[i]f a taxpayer has a car, but no car payment, only the operating costs portion of the transportation standard is used to figure the allowable transportation expense."  IRS Collection Standards, available at www.irs.gov/individuals/article/0,,id=

96543,00.html.

In *Ransom*, the three-judge Bankruptcy Appellate Panel affirmed the Bankruptcy Court for the District of Nevada in holding that a Chapter 13 debtor who owned an unencumbranced vehicle could not deduct the $471 transportation ownership expense under section 707(b)(2) from his monthly income.  The panel reviewed the split of bankruptcy authority and found no less than six different rationales explaining the interpretations of the divided courts.  The panel ultimately determined that the plain meaning and the goals of the BAPCPA should govern the decision.

It seems clear to this Court that Congress intended both that the word "applicable" have some meaning and also that it modify the phrase "monthly expense amounts specified under the National Standards and Local Standards...."  11 U.S.C. § 707(b)(2)(A)(ii)(I).  In other words, not every debtor can take every monthly expense amount so specified by the IRS.  For example, to conclude that any debtor who has two old cars in non-operating condition can shelter $803 of monthly disposable income defies common sense.  A Chapter 7 petitioner could thereby

10

shelter $48,180 in income (over a 60-month period) from the reach of unsecured creditors.  The word must mean something, and if some monthly expenses are applicable, then other monthly expenses are not applicable.

This is the rationale utilized by the *Ransom* panel in determining not to allow the ownership deduction to vehicles owners who have no lease or loan payments.  "When the debtor has no monthly ownership expenses, it makes no sense to deduct an ownership expense to shield it from the creditors."  *Ransom*, ___ B.R. ___, *6 (*quoting Neary v. Ross-Tousey (In re Ross-Tousey)*, 368 B.R. 762, 766 (E.D. Wis. 2007)).  The *Ransom* panel decided that the plain meaning of the word "applicable" means "capable of or suitable for being applied."  *Id.*, (*quoting* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 60 (11th ed. 2005)).  The *Ransom* panel states that giving the deduction to a debtor who has no lease or loan payments reads the word "applicable" right out of the Bankruptcy Code.  *Id.*  The plain meaning is to give the deduction to those who have lease or payments, and this has a substantive effect that is consistent with the underlying goals of BAPCPA, including "ensur[ing] that debtors repay as much of their debt as

11

reasonably possible." *Id.* at *7 (citations omitted). "When viewed within the larger context of BAPCPA, we believe the statute can only be interpreted to 'apply' expense standards in cases where debtors in fact pay such expenses." *Id.*

This Court also concludes that the plain meaning of section 707(b)(2)(A)(ii)(I) of Title 11 the Bankruptcy Code requires that debtors who have no vehicle lease or loan payment be allowed no applicable monthly transportation ownership expense amount. For this reason, the Court REVERSES the order of the Bankruptcy Court dated February 27, 2007, and REMANDS for further proceedings consistent with this order.

Done and dated this 21st day of January, 2008.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE